Sheehan & Associates, P.C.
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*

    *-and-*

Reese LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

United States District Court
Southern District of New York                     1:20-cv-00888

| | |
|---|---|
| Magdiela Gonzalez, individually and on behalf of all others similarly situated, | |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Gojo Industries, Inc., | |
| Defendant | |

Plaintiff by attorneys alleges upon information and belief, except for allegations pertaining to plaintiff, which are based on personal knowledge:

1.    Gojo Industries, Inc. ("defendant") manufactures, distributes, markets, labels and sells topical antiseptic products consisting primarily of ethyl alcohol under the Purell brand and Advanced Hand Sanitizer product line which includes gels and foams ("Products") .

2.    The Products are available to consumers from retail and online stores of third-parties and defendant's website and are sold in various sizes including 12 OZ (354 ML).

1

3.     The Products contain substantially similar representations on the labels including "2X Sanitizing Strength*: 1 squirt PURELL Advanced = 2 squirts Other National Brands," "Advanced Hand Sanitizer," "Kills 99.99% of Illness Causing Germs," "Refreshing Gel" and "Leaves Hands Feeling Soft."



4.     The Products' website and social media accounts contains additional representations attesting to their ability to prevent colds, flu and promote educational achievement.

5.     However, the Food and Drug Administration ("FDA") recently issued a warning letter to defendant which detailed defendant's false, deceptive and dangerous marketing of the

Products, as described below.[1]

| General Claim | Specific Quotations from Defendant's Marketing Materials and Website |
|---|---|
| Germs | • Kills more than 99.99% of most common germs that may cause illness in a healthcare setting, including MRSA & VRE |
| | **Candida auris in the Healthcare Setting** |
| Candida auris | • To help prevent transmission, hand hygiene with an alcohol-based hand sanitizer is recommended along with hand washing if hands are soiled. PURELL® Advanced Gel, Foam, and Ultra-Nourishing Foam Hand Sanitizer products demonstrated effectiveness against a drug resistant clinical strain of Candida auris in lab testing. |
| | **PURELL® Products Help Eliminate MRSA & VRE** |
| 100% MRSA & VRE Reduction | • 100% MRSA & VRE Reduction[] . . . A recent outcome study shows that providing the right products, in a customized solution, along with educational resources for athletes and staff can reduce MRSA and VRE by 100%[] |
| | **The PURELL SOLUTION™ for Education** |
| Educational Outcomes/Truancy | • 51% Reduced Student Absenteeism |
| | • PURELL® products have proven results in delivering positive health outcomes. |
| | • Illness causes 144 million lost school days each year. |
| | • In a recent study, student absenteeism was reduced by 51% when PURELL hand hygiene products were used in conjunction with a curriculum to teach kids about good hand hygiene[] . . . |
| | • 10% Less Teacher Absenteeism . . . PURELL® Products Help Teachers Stay Well . . . |
| | • New teachers are particularly more susceptible to student borne illness[]. |
| | • In one study, schools that combined hand-hygiene education with PURELL® products reduced teacher absenteeism by 10%[]. |

---

[1] FDA, Warning Letter to Gojo Industries, Inc., January 17, 2020, MARCS-CMS 599132.

- PURELL® Products are Proven to Reduce Absenteeism
- On average, illness causes 144 million lost school days each year[] and missing school can have a significant effect on a student's performance.
- Research has shown that when used alongside a curriculum to teach students about hand hygiene, PURELL® products can reduce student absenteeism by up to 51%[].
- Additionally, teachers who follow this program also experience a 10% reduction of absenteeism[].

Common Colds

- PURELL® Products Help Eliminate MRSA & VRE . . . 100% MRSA & The PURELL SOLUTION™ has the products you need to help prevent the spread of infection this germ season.

**Illness Outbreak**

- What Steps Can I Take to Prevent the Spread of Norovirus?
- Even though norovirus is highly contagious, there are ways you can reduce the risk of its spread.
- According to the Centers for Disease Control and Prevention, follow these steps to reduce the spread of the virus.
- 1. Practice good hand hygiene. Make sure to wash your hands with soap and water at key moments, especially after using the restroom since the virus can spread through stool.

Ebola virus, norovirus, and influenza

- Alcohol-based hand sanitizers with at least 60% alcohol can be used in addition to handwashing. . .
- Are PURELL® Hand Sanitizer products effective against the flu?
- The FDA does not allow hand sanitizer brands to make viral claims, but from a scientific perspective, influenza is an enveloped virus. Enveloped viruses in general are easily killed or inactivated by alcohol.
- The World Health Organization (WHO) and the Center for Disease Control and Prevention (CDC) are recommending the use of alcohol-based hand sanitizer as a preventive measure for flu prevention"

4

- Is PURELL® Advanced Hand Sanitizer Effective Against Ebola?.
- As of today, we are not aware of any hand sanitizers that have been tested against Ebola viruses, including PURELL® Advanced Hand Sanitizer.
- However, it is important to note that the Ebola virus is an enveloped virus. Enveloped viruses in general are easily killed or inactivated by alcohol.
- World Health Organization (WHO) and the Center for Disease Control and Prevention (CDC) are recommending the use of alcohol-based hand sanitizer as a preventive measure during this outbreak . . .

6.     The FDA stated that defendant's statements regarding the efficacy of the Products to combat Ebola, norovirus, influenza, absenteeism and common colds indicate the Products are "intended for the diagnosis, cure, mitigation, treatment, or prevention of disease, and/or under section 201(g)(1)(C) of the FD&C Act, 21 U.S.C. 321(g)(1)(C), because they are intended to affect the structure or any function of the body."[2]

7.     However, there are no credible scientific studies that link killing or decreasing bacteria on the skin with preventing any of the conditions defendant claims.

8.     The Products are marketed as drugs but lack approval from the FDA.

9.     The FDA has never established that the Products' main ingredient, ethyl alcohol, is generally recognized as safe and effective for its intended use (GRASE) for antiseptic uses.

10.     The Products' claims are beyond those permitted for topical antiseptics which the FDA has allowed.

11.     No topical antiseptic products have ever been able to achieve the results defendant advertises as such outcomes are beyond the ability of ethyl alcohol solution.

---

[2] Id.

5

12.    Defendant's claims are harmful and deceptive to consumers because they give the impression that using the Products is sufficient to prevent the above-described diseases and illnesses.

13.    When consumers believe defendant's claims, they are less likely to engage in other precautionary and preventive behavior which actually will prevent transmission of these diseases.

14.    Defendant's unqualified claims with respect to absenteeism gives parents the message that regardless of specific reasons their children may have missed school, use of the Products would be able to reduce their missed days by half.

15.    Defendant's invocation of the Ebola virus is intended to demonstrate the potency of the Products.

16.    Defendant stops short of disclaiming the Products' efficacy in preventing or curing Ebola, but couches its response in qualifying language: "As of today, we are not aware of any hand sanitizers that have been tested against Ebola viruses."

17.    In other words, the Products are effective enough that *if* there was testing of hand sanitizers against Ebola, the Products *could* prevent Ebola.

18.    While the average American has almost a zero chance of ever contracting "Ebola," its mention is shorthand to describe the most horrific and fatal disease in existence.

19.    Even *if* the Products may not be effective against Ebola, the logic goes, consumers could reasonably expect the Products to be effective at preventing diseases less serious than Ebola, which would include practically every other known disease.

20.    The recent outbreak of the fatal Coronavirus has prompted increased demand for the Products.

21.    According to some reports, defendant has promoted the Products as a viable means

of preventing transmission of Coronavirus.

22.    The Products are unable to provide the outcomes promised by defendant, but through their representations, cause consumers to defer or forgo taking other concrete measures at preventing disease and illness, thereby increasing their chances of contracting same.

23.    Defendant's branding and marketing of the Products is designed to – and did – deceive, mislead, and defraud consumers.

24.    Defendant's false, deceptive, and misleading marketing of the Products has enabled defendant to sell more of the Products and at higher prices per unit, than it would have in the absence of this misconduct.

25.    This results in additional profits to defendant at the expense of consumers and consumers' greater susceptibility to disease, illness and other more mundane causes of absenteeism, like staying up late at night.

26.    The value of the Products that plaintiff actually purchased and used was materially less than its value as represented by defendant.

27.    Had plaintiff and class members known the truth, they would not have bought the Products or would have paid less for it, and would not have forgone or deferred proven, medically established recommendations to prevent transmission of disease and illness.

28.    The Products contains other representations which are misleading and deceptive.

29.    As a result of the false and misleading labeling, the Products are sold at a premium price, approximately no less than $2.99 per 12 OZ, excluding tax, compared to other similar products represented in a non-misleading way.

### Jurisdiction and Venue

30.    Jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2) (Class Action Fairness Act

of 2005 or "CAFA").

31.    Under CAFA, district courts have "original federal jurisdiction over class actions involving (1) an aggregate amount in controversy of at least $5,000,000; and (2) minimal diversity[.]" *Gold v. New York Life Ins. Co.*, 730 F.3d 137, 141 (2d Cir. 2013).

32.    Upon information and belief, the aggregate amount in controversy is more than $5,000,000.00, exclusive of interests and costs.

33.    This is a reasonable assumption because the service is used across the country and has been for several years.

34.    Plaintiff is a citizen of New York.

35.    Defendant is a Ohio corporation with a principal place of business in Cuyahoga Falls, Summit County, Ohio and is a citizen of Ohio.

36.    This court has personal jurisdiction over defendant because it conducts and transacts business, contracts to provide and/or supply and provides and/or supplies services and/or goods within New York.

37.    Venue is proper because plaintiff and many class members reside in this District and defendant does business in this District and State.

38.    A substantial part of events and omissions giving rise to the claims occurred in this District.

Parties

39.    Plaintiff is a citizen of New York, New York County, New York.

40.    Defendant Gojo Industries, Inc. is a Ohio corporation with a principal place of business in Cuyahoga Falls, Ohio, Summit County.

41.    During the relevant statutes of limitations, plaintiff purchased and used defendant's

Products within this district and/or State in reliance on defendant's marketing materials.

## Class Allegations

42.    The classes will consist of all purchasers of the Products in New York, the other 49 states and a nationwide class where applicable, during the applicable statutes of limitations.

43.    Common questions of law or fact predominate and include whether defendant's representations were and are misleading and if plaintiff and class members are entitled to damages.

44.    Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive actions.

45.    Plaintiff is an adequate representative because her interests do not conflict with other members.

46.    No individual inquiry is necessary since the focus is only on defendant's practices and the class is definable and ascertainable.

47.    Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

48.    Plaintiff's counsel is competent and experienced in complex class action litigation and intends to adequately and fairly protect class members' interests.

49.    Plaintiff seeks class-wide injunctive relief because the practices continue.

## New York GBL §§ 349 & 350
### (Consumer Protection from Deceptive Acts)

50.    Plaintiff incorporates by reference all preceding paragraphs.

51.    Plaintiff and class members desired to purchase products which were as described and marketed by defendant and expected by reasonable consumers, given the product type.

52.    Defendant's acts and omissions are not unique to the parties and have a broader

impact on the public.

53.   Defendant's conduct was misleading, deceptive, unlawful, fraudulent, and unfair because it gives the impression to consumers the Products are effective at preventing colds, flu, absenteeism and promoting bodily health and increased academic achievement.  However, when consumers use the Products as intended, they are lulled into a false sense of security as to other scientifically proven measures they should take to achieve the outcomes promoted by defendant.

54.   Plaintiff  and class members would not have purchased the Products or paid as much if the true facts had been known and would not have foregone or deferred taking proven steps at achieving the outcomes promoted by defendant, suffering damages.

Negligent Misrepresentation

55.   Plaintiff incorporates by reference all preceding paragraphs.

56.   Defendant's marketing and advertising gives the impression to consumers the Products are effective at preventing colds, flu, absenteeism and promoting bodily health and increased academic achievement.  However, when consumers use the Products as intended, they are lulled into a false sense of security as to other scientifically proven measures they should take to achieve the outcomes promoted by defendant.

57.    Defendant had a duty to disclose and/or provide non-deceptive marketing of the Products and its intended uses, and knew or should have known same were false or misleading.

58.   This duty is based on defendant's position as an entity which has held itself out as having special knowledge and experience in the production, service and/or sale of the product or service type.

59.   The representations took advantage of consumers' (1) cognitive shortcuts made at the point-of-sale and (2) trust placed in defendant, a well-known and respected brand in this sector.

10

60. Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, the purchase of the Products.

61. Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known and would not have foregone or deferred taking proven steps at achieving the outcomes promoted by defendant, suffering damages.

Breaches of Express Warranty, Implied Warranty of Merchantability and
Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*

62. Plaintiff incorporates by reference all preceding paragraphs.

63. Defendant gives the impression to consumers the Products are effective at preventing colds, flu, absenteeism and promoting bodily health and increased academic achievement. However, when consumers use the Products as intended, they are lulled into a false sense of security as to other scientifically proven measures they should take to achieve the outcomes promoted by defendant.

64. The Products warranted to plaintiff and class members that they possessed preventive and other positive capabilities they did not.

65. Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Products.

66. This duty is based, in part, on defendant's position as one of the most recognized companies in the nation in this sector.

67. Plaintiff provided or will provide notice to defendant, its agents, representatives, retailers and their employees.

68. Defendant had received or should have been aware of the misrepresentations due to numerous complaints by consumers and the FDA to its main office over the past several years.

11

69.   The Products did not conform to their affirmations of fact and promises due to defendant's actions and were not merchantable.

70.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known and would not have foregone or deferred taking proven steps at achieving the outcomes promoted by defendant, suffering damages.

Fraud

71.   Plaintiff incorporates by references all preceding paragraphs.

72.   Defendant's marketing gives the impression to consumers the Products are effective at preventing colds, flu, absenteeism and promoting bodily health and increased academic achievement.  However, when consumers use the Products as intended, they are lulled into a false sense of security as to other scientifically proven measures they should take to achieve the outcomes promoted by defendant.

73.   Defendant's fraudulent intent is evinced by the outrageousness of its claims and the seriousness of the issue – preventing colds and flu – and defendant's knowledge that in relying on its claims, consumers would fail to seek treatment when they otherwise should have and take measures backed by the scientific and medical community to achieve the desired outcomes.

74.   Plaintiff and class members would not have purchased the Products or paid as much if the true facts had been known and would not have foregone or deferred taking proven steps at achieving the outcomes promoted by defendant, suffering damages.

Unjust Enrichment

75.   Plaintiff incorporates by reference all preceding paragraphs.

76.   Defendant obtained benefits and monies because the Products were not as represented and expected, to the detriment and impoverishment of Plaintiff and class members,

12

who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

   **WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and undersigned as counsel for the class;

2. Entering preliminary and permanent injunctive relief by directing defendant to correct the challenged practices to comply with the law;

3. Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, restitution and disgorgement for members of the State Subclasses pursuant to the applicable laws of their States;

4. Awarding monetary damages and interest, including treble and punitive damages, pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   February 1, 2020

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
_____
Spencer Sheehan
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Telephone: (516) 303-0552
Facsimile: (516) 234-7800
*spencer@spencersheehan.com*
E.D.N.Y. # SS-8533
S.D.N.Y. # SS-2056

-and-

Reese LLP
Michael R. Reese
100 West 93rd Street, 16th Floor
New York, NY 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
*mreese@reesellp.com*

1:20-cv-00888
United States District Court
Southern District of New York

Magdiela Gonzalez, individually and on behalf of all others similarly situated,

Plaintiff,

- against -

Gojo Industries, Inc.,

Defendant

## Class Action Complaint

Sheehan & Associates, P.C.
505 Northern Blvd Ste 311
Great Neck NY 11021-5101
Tel: (516) 303-0552
Fax: (516) 234-7800

Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information, and belief, formed after an inquiry reasonable under the circumstances, the contentions contained in the annexed documents are not frivolous.

Dated:  February 1, 2020

/s/ Spencer Sheehan
Spencer Sheehan